IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LEEA ARNOLD, ET AL. | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:08-CV-170-Y |
| | § |
| ROCHELLE BRADLEY, ET AL. | § |

<u>ORDER GRANTING MOTION FOR REMAND</u>

This case arises from the solicitation and promotion of a retirement investment product designed to provide significant tax benefits to its participants. Plaintiffs Leea Arnold, Dudley Caraway, and The LKA Group, Limited Partner, commenced this case in Texas state court alleging various state-law causes of action against Defendants for their promotion and sale of a defined-benefit pension plan set up under section 412(i) of the Internal Revenue Code. Defendants removed the case to this Court contending that Plaintiffs' claim for breach of fiduciary duty is completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), and that Plaintiffs' state-law claims arise under federal law because they are dependent on an interpretation of section 412(i) of the Internal Revenue Code. After review of the pleadings, the Court concludes that Plaintiffs' motion (doc. #10) to remand should be GRANTED.

I. Background

When a defendant removes a case to federal court, the question of jurisdiction "is resolved by looking at the complaint at the

time the petition for removal is filed." *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1254 (5th Cir. 1990). For purposes of resolving this motion to remand, the Court will treat Plaintiffs' allegations in their state-court petition as true.

Plaintiffs Arnold and Caraway are in the business of horse reproduction and breeding in Parker County, Texas. In November 2004, they were approached by defendant Jerry Bailey, who solicited his services as a financial planner. He represented to Arnold and Caraway that he worked in the wealth-management industry.

Intrigued, Arnold and Caraway entrusted Bailey with their 2003 personal tax returns and met with Bailey and defendant Rochelle Bradley. At the meeting, Bailey and Bradley provided financial advice and promoted a retirement plan designed to allow Arnold and Caraway to receive tax deductions for their business and accumulate significant wealth for retirement. They discussed Arnold's and Caraway's projected financial resources over the next five years. Arnold and Caraway advised Bailey and Bradley that they planned to purchase additional land in the next couple of years, which would restrict their cash flow during that period.

Based on their discussions and a review of Arnold's and Caraway's financial positions, Bailey and Bradley recommended the establishment of a defined-benefit plan under section 412(i) of the Internal Revenue Code ("the 412(i) Plan"). Bailey and Bradley specifically informed Arnold and Caraway that (1) they had special

expertise in life-insurance policies, defined-benefit plans, and federal income taxes; (2) the 412(i) Plan was appropriate and legally permissible; (3) the 412(i) Plan would qualify under section 412(i) of the Internal Revenue Code; (4) the contributions made to the 412(i) Plan would be invested and would accumulate over time, with minimal surrender charges; (5) the 412(i) Plan could be amended to allow for reduced future contributions to accommodate Arnold's and Caraway's projected restricted cash flow from the purchase of land; and (6) the 412(i) Plan would be designed to meet Arnold's and Caraway's short- and long-term financial objectives. The financial benefits of creating a limited partnership to reduce taxes for Arnold's and Caraway's horse-breeding business were also discussed at this meeting.

Based on these representations, Arnold and Caraway decided to establish the 412(i) Plan and to establish the LKA Group, Limited Partner ("LKA"). They also hired Bradley and her firm, defendant Bradley-Duall, PLLC, to handle the books and taxes for Arnold, Caraway, and LKA and terminated their prior accountant. Bailey and Bradley had defendants Pension Professionals of America, L.L.C. ("Pension Professionals"), and American General Life Insurance Companies ("American General"), provide the plan documents and life-insurance policies for the 412(i) Plan. Bailey and Bradley began implementing the 412(i) Plan.

In December 2004, Bailey and Bradley had Arnold and Caraway

3

issue a check for $3875 to formally establish the 412(i) Plan even though the plan documents had not yet been produced. Sometime later, Arnold and Caraway received the plan documents, and Bailey and Bradley stated that the documents were consistent with their November 2004 discussions. Bailey and Bradley stated that the administrative fees would be $1800 per year and would represent an ongoing administrative expense.

Between February 2005 and June 2006, Arnold and Caraway contributed more than $328,000 to the plan. In 2006, as anticipated, Arnold and Caraway purchased additional land. They discussed amending their 412(i) Plan to accommodate their restricted cash flow resulting from the purchase of the land. Bailey and Bradley informed Arnold and Caraway that it would be impossible to amend the plan to accommodate the restriction and advised them of three options: (1) terminate the plan; (2) adopt a new plan; or (3) continue making contributions at the same level. Around this time, Arnold and Caraway received a letter from Pension Professionals informing them that the Internal Revenue Service was "attacking" 412(i) Plans.

Arnold and Caraway did not have the financial resources to continue making contributions at the same levels. Further, the letter from Pension Professionals scared Arnold and Caraway and undermined their trust in Bailey and Bradley. Arnold and Caraway rejected the proposed new plan because it would require that they

4

secure, by placing their entire business at risk, a loan in an amount exceeding two million dollars.  Thus, Arnold and Caraway elected to terminate the plan, which they contend caused them to lose over $200,000.

Arnold and Caraway contend that Bailey and Bradley never disclosed any commissions or consideration paid respective to the 412(i) Plan, and they discovered that certain commissions were paid when they received a completed Internal Revenue Service Form 5500 in 2006.  They also contend that Bailey and Bradley never informed them that they would be required to report taxable income for a current economic benefit related to the contributions to the 412(i) Plan.  This failure, Arnold and Caraway contend, led to additional tax payments of approximately $10,700.

Arnold and Caraway seek economic damages from Defendants, punitive damages, and attorney's fees.  Alternatively, they seek rescission of the original contract.

II.  Analysis

Under 28 U.S.C. § 1441(a), "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . ." may be removed to a federal district court.  Under this statute, a state-court action may be removed to federal court "only if the action could have originally been filed in the federal court."  *Aaron v. Nat'l Union Fire Ins. Co.*, 876

F.2d 1157, 1160 (5th Cir. 1989). Removal jurisdiction, however, must be strictly construed because it implicates important federalism concerns. *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 922 (5th Cir. 1997). Thus, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Ins. Co.,* 810 F. Supp. 748, 750 (N.D. Tex. 1992). The party removing the case enjoys the burden of establishing federal court jurisdiction. *Frank,* 128 F.3d at 921-22.

Normally, there are two bases on which a federal court exercises removal jurisdiction: (1) the existence of a federal question; or (2) complete diversity among the parties. *See* 28 U.S.C. §§ 1331 and 1332. Since Defendants only allege federal-question jurisdiction as the basis for removal, the Court will limit its examination to whether Plaintiffs' case involves a federal question. Defendants present two arguments in favor of this Court's removal jurisdiction. They first contend that Plaintiffs' fiduciary-breach claims are completely preempted by sections 502(a)(2) and (3) of ERISA. Second, they contend that Plaintiffs' state-law claims turn, in large part, on the proper interpretation and application of the internal revenue rules, codes, and regulations, including 26 U.S.C. § 412(i). The Court will address each in turn.

A. ERISA Premption

Federal-question jurisdiction may be exercised by the Court if the case presents any issues "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The presence or absence of federal-question jurisdiction is governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank,* 522 U.S. 470, 475 (1998). This is because the plaintiff is considered the master of his complaint, and he is free to raise the claims he wishes to pursue and omit those he wishes to forsake. *Anderson v. American Airlines,* 2 F.3d 590, 593 (5th Cir. 1993). A "plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 399 (1987).

"There is an exception to the well-pleaded-complaint rule, though, if Congress so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir. 2003)(en banc)(internal quotations and citations omitted). "ERISA is one of these statutes." *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 208 (2004).

There are two types of preemption under ERISA. *See Ellis v. Liberty Life Assurance Co.,* 394 F.3d 262, 276 n.34 (5th Cir. 2004).

The first is complete preemption, and it occurs when a plaintiff's state-law claim seeks relief within the scope of ERISA's civil-enforcement provisions. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987). Complete preemption "recharacterizes' preempted state-law claims as 'arising under' federal law for the purposes of . . . making removal available to the defendant." *McClelland v. Gronwaldt,* 155 F.3d 507, 516 (5th Cir. 1998). Thus, claims that come within the scope of ERISA section 502(a) are completely preempted and provide "grounds for a district court's exercise of jurisdiction upon removal." *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 337 (5th Cir. 1999).

The second type of ERISA preemption is regarded as "'ordinary' or 'conflict' preemption, resulting in the displacement of state law." *Bullock v. Equitable Life Assur. Soc'y of the U.S.,* 259 F.3d 395, 399 (5th Cir. 2001)(citations omitted). This involves claims that do not come within ERISA section 502, but may still be preempted under ERISA section 514.[1] "State-law claims [that] fall outside the scope of ERISA's civil-enforcement provision, § 502, even if preempted by § 514(a), are still governed by the well-pleaded-complaint rule and, therefore, are not removable under . . . complete-preemption principles . . . ." *Giles,* 172 F.3d at 337 (internal quotations and citations omitted). Thus, conflict-

---

[1] In pertinent part, section 514 provides that "the provisions of this title and title IV shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).

8

preemption "does not establish federal-question jurisdiction. Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a *defense* to a state action." *Id.* (emphasis in original).

There are two elements to complete preemption: First, the state-law claims must address "areas of exclusive federal concern . . . ." *Hollis v. Provident Life and Accident Ins. Co.,* 259 F.3d 410, 414 (5th Cir. 2001). Any state-law claim that "duplicates, supplements, or supplants the ERISA civil-enforcement remedy" addresses an area of exclusive federal concern and is completely preempted. *Aetna Health Inc.,* 542 U.S. at 209. And any cause of action based on state law that in reality seeks to recover benefits due under an ERISA-governed plan, seeks to enforce rights under an ERISA-governed plan, or seeks to clarify rights to future benefits under the terms of an ERISA-governed plan, falls under ERISA's civil-enforcement mechanism and is subject to complete preemption. *See* 29 U.S.C. § 1132(a)(1)(B); *Aetna Health, Inc.,* 542 U.S. at 207-08. Second, the state-law claims must "directly affect the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hollis,* 259 F.3d at 414. Here, the Court concludes that Defendants have failed to establish the first element.

Section 502(a)(2) of ERISA states that a civil action may be brought by a participant, beneficiary, or fiduciary to a plan for

9

appropriate relief under ERISA section 409.  *See* 29 U.S.C. § 1132(a)(2).  Section 409, in turn, imposes liability on a fiduciary for breach of duties owned to beneficiaries.  It provides for fiduciaries to be held personally liable for breaches of duty and for losses to the plan because of a breach of duty.  But it further provides that "no fiduciary shall be liable with respect to a breach of fiduciary under this title **if such breach was committed before he became a fiduciary** or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b)(emphasis added).

Defendants characterize Plaintiffs' petition as expressing a "claim for breach of fiduciary duty based upon the advice, recommendations, and representations allegedly made to Plaintiffs in connection with the formation, funding, administration, and termination of the plan."  (Defs.'s Br. at 3.)  A review of Plaintiffs' petition, however, reveals that all of their state-law causes of action, including their cause of action for breach of fiduciary duty, stem from alleged fraudulent conduct, misrepresentations, and omissions that occurred prior to the 412(i) Plan being established.  The alleged misconduct, according to Plaintiffs' petition, occurred during the time Defendants solicited and promoted the 412(i) Plan, at which time statements were made with the intention of convincing Plaintiffs to purchase the plan.  None of Plaintiffs' claims, on their face or by necessary implication, seek relief for a breach of fiduciary duty that occurred after the

412(i) Plan was created and as required under ERISA section 502(a) and (b). None of Plaintiffs' claims require the interpretation of the 412(i) Plan or concern its administration. And there is nothing in ERISA reflecting Congress's intent to displace state law in matters of fraud and misrepresentation in the solicitation and promotion of an ERISA benefit plan.

Neither do Plaintiffs' claims fall under ERISA section 502(a)(3). This provision has been referred to as the "catch-all" provision and allows for equitable relief for violations of ERISA not redressed in any other civil-enforcement provision. *See Variety Corp v. Howe,* 516 U.S. 489, 512, (1996). Under this provision, a plan participant, beneficiary, or fiduciary may bring a civil action to enjoin any act or practice that violates any provision of ERISA or the terms of the plan, or to enforce the provisions of ERISA or the terms of a plan. *See* 29 U.S.C. § 1132(a)(3). This provision, however, is limited to redressing violations of ERISA or the terms of a plan. Plaintiffs' petition does not seek to enforce any ERISA provision or to enforce any of the 412(i) Plan's terms. Rather, Plaintiffs seek redress for fraud and misrepresentations in connection with the solicitation and promotion of the plan. The challenged activity occurred before the 412(i) Plan came into existence and before there were any plan terms to enforce. Therefore, the Court concludes that Plaintiffs' state-law claims are not completely preempted by ERISA.

11

B. Substantial Federal Question

Defendants further argue that removal was appropriate because Plaintiffs' claims turn on an interpretation of federal law. In particular, Defendants contend that Plaintiffs' claims "necessarily turn on the construction and effect of federal law because their resolution involves an interpretation of whether the [412(i) Plan] . . . complies with and qualifies under section 412(i) of the Internal Revenue Code." (Defs.' Br. at 11.)

Although federal-question jurisdiction is generally invoked by a plaintiff's complaint pleading a cause of action under federal law, there is a longstanding, but less frequently used, variety of federal-question jurisdiction. According to the Supreme Court's most recent formulation of this doctrine, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005). Not every state-law claim that implicates federal law triggers federal-question jurisdiction; otherwise, this doctrine would swallow the doctrine that the plaintiff is the master of his complaint. Indeed, "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto." *Id*. Thus, a proper application of

this doctrine requires the substantial and disputed federal question be a necessary element of one of the plaintiff's well pleaded state-law claims.

After reviewing Plaintiffs' petition, the Court is not convinced that their state-law claims implicate a substantial disputed question of federal law. Plaintiffs' claims do not, necessarily, turn on whether their plan violated section 412(i) of the Internal Revenue Code, but whether Defendants committed fraud and made misrepresentations in presenting that plan to Plaintiffs and inducing them to buy into it. The 412(i) Plan may fully comport with section 412(i) of the Internal Revenue Code, but that does not necessarily mean that Defendants did not commit fraud or make misrepresentations.

Nevertheless, even if Plaintiffs' state-law claims implicate section 412(i), there is a question that retaining this case "raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress . . . ." *Grable,* 545 U.S. at 314. Plaintiff's petition reveals that this case is more about Defendants alleged fraudulent misconduct than it is about whether the 412(i) Plan would pass muster under the Internal Revenue Code. Since the Court is directed to construe removal jurisdiction strictly for precisely this reason, the Court concludes that remand is appropriate.

III. Conclusion

For the foregoing reasons, the Court GRANTS the motion to remand. Accordingly, this case is REMANDED to the 43rd District Court of Texas, Parker County.

Plaintiffs' motion requests that the Court award them $4825 in attorney's fees.[2] "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court concludes that an award of attorney's fees is appropriate because Defendants did not have "objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). Based on a review of Plaintiffs' evidence in support of its request for attorney's fees, the Court concludes that $4000 reflects a reasonable attorney fee. Accordingly, Defendants shall pay Plaintiffs $4000 in attorney's fees incurred as a result of the removal.

SIGNED July 25, 2008.

*[signature]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[2] In an affidavit attached to their motion, Plaintiffs claim $5325 in attorney's fees. Because their motion requests an award of $4825 in attorney's fees, the Court will not consider the $5325 amount recited in the affidavit.